UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID COREY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-3354** |
| **DEEPWATER SPECIALISTS, INC., ET AL.** | **SECTION "H" (3)** |

## ORDER

On May 28, 2014, the Motion to Compel Discovery [Doc. #387] came on for oral hearing before the undersigned. Present were John Venezia on behalf of intervenors and Scott Labarre and Ryan Grant on behalf of plaintiff. After the oral hearing, the Court took the motion under advisement and ordered plaintiff to provide certain documents to the Court for *in camera* review. Plaintiff did so. Having reviewed the motion, the opposition, the case law and the documents, the Court rules as follows.

### I.    Background

The underlying complaint alleges as follows. ENI US Operating Company, Inc. ("ENI") owns the MC-365A fixed offshore platform located off the coast of Louisiana on the Outer Continental Shelf. To provide services associated with the refurbishment of the MC-365A, ENI contracted with various companies. One of these companies was Berry Contracting, L.P. ("Berry"). Berry contracted with plaintiff's employer, Triple S Hydrostatic, to perform services on the platform. On October 7, 2009, plaintiff David Corey was working as a technician on the MC-365A

when there was an explosion. Alleging injuries as a result of the explosion, plaintiff brought suit against the companies performing services on the MC-365A at the time of the explosion.

The lawsuit eventually settled. The current dispute is the intervention of Salvador Brocato and Lionel Sutton, Corey's former counsel ("intervenors"), for their share of attorneys' fees earned by Corey's current counsel, Arnold & Itkin, L.L.P. ("AI"), from the $2,187,500.00 settlement.

## II.   Law and Analysis

The following discovery requests are in dispute, propounded by intervenors on plaintiff:

Int. No. 13:   Asks whether any attorney provided Corey with financial assistance during the litigation and the details of any such assistance. Corey objected on the ground of relevance, harassment and privilege. Intervenors contend that the information is necessary for the Court to determine who provided greater financial assistance and the actual reason for their discharge.

RFP No. 2:   Seeks all attorney contracts. Corey raised the same objections as above. Intervenors argue that the information is necessary to determine the reasonableness of the fees of the attorneys.

RFP No. 6:   Seeks all documents that demonstrate financial assistance by any attorney. Corey objected on the same grounds as above. Intervenors maintain that this information is necessary to determine the extent of financial assistance by each attorney.

Intervenors also maintain that the answer to Int. No. 8 is deficient. It seeks the amount of total attorneys' fees that Corey is being charged and the amount that each attorney will earn and their names.

The majority of the documents produced to the Court for *in camera* review are cancelled checks and other indicia of monies either loaned or fronted to Corey by AI. All of the documents related to advances and loans, etc. to Corey are relevant and reasonably calculated to lead to the discovery of admissible evidence. Corey contends that he terminated intervenors for cause while intervenors argue that he terminated them because they refused to buy him a car and loan him further money. These documents may therefore lead to the discovery of admissible evidence as to this

dispute.  The documents are not protected by the attorney-client privilege and/or work-product privileges because they represent only underlying facts, *i.e.*, the amount of money loaned to Corey by his subsequent counsel AI.  *United States v. El Paso Co.*, 682 F.2d 530, 539 n.10 (5th Cir. 1982) ("The attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney.") (citations omitted).

Corey produced only three other documents to the Court for *in camera* review: AI's retainer agreement ("the contingency-fee contract"), a Co-Counsel Agreement, and an Appraisal of the Earning Capacity of Mr. David J. Corey prepared by Kenneth G. McCoin, Ph.D., C.F.A. ("the Appraisal").  Information such as contingency fee contracts, hourly rates, hours spent by attorneys working on this litigation, attorney's fees charged and costs incurred are not "confidential communications" and are therefore not privileged.  *Stonehenge/FASA Tex., JDC, L.P. v. Miller*, No. 94-CV-00912-G, 1998 WL 826880, at *1 (N.D. Tex. 1998) (citing *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981); *In re Grand Jury Proceedings*, 517 F.2d 666, 671 (5th Cir. 1975)).

Given this case law, the contingency-fee contract between Corey and AI is discoverable. The same does not hold for the Co-Counsel Agreement however.  Notwithstanding the above case law, the Court notes that a document must also itself be reasonably calculated to lead to the discovery of admissible evidence and relevant.  The Court has reviewed the Co-Counsel Agreement and finds that it is not reasonably calculated to lead to the discovery of admissible evidence.  The Court finds no reason why the apportionment between AI and co-counsel is relevant to the claim here given that the contingency fee in AI's contract is the only one that matters.  In other words, the contingency fee in AI's contract is the only fee that all current co-counsel will earn for having represented Corey.  How counsel apportions it is simply irrelevant.

The Court has found no case law on point, but a similar case surfaced during the Court's research. In *Guillot v. Daimlerchrysler Corp.* 113 So.3d 507 (La. Ct. App. 2013), the plaintiffs in the underlying lawsuit signed a contingency-fee contract with their first counsel which provided a 50% contingency fee if the lawsuit were appealed. *See id.* at 512. Before the appeal, the plaintiffs fired their first counsel and hired new counsel. *See id.* at 509. An attorneys'-fee dispute thus arose.

On appeal in the attorneys'-fee dispute, former counsel argued that the percentage of attorneys' fees to be apportioned between them and current counsel was "the highest ethical contingency percentage to which the Plaintiffs agreed in th[e] case," which "was the 50% contingency fee, which Plaintiffs agreed to assign to [former counsel] if the case was appealed." *Id.* at 512. Current counsel argued that the 50% contingency fee was inapplicable because former counsel was not involved in the appeal. *Id.* The court rejected this argument, noting that

> [u]nder *Saucier*, *supra*, the amount of the fee to be paid by the client is to be determined according to the highest ethical contingency percentage to which the client contractually agreed in *any* of the contingency fee contracts that he executed. In this case, that percentage is 50%.

*Id.* (emphasis added).

*Guillot* provides no support for a finding that the Co-Counsel Agreement is relevant or reasonably calculated to lead to the discovery of admissible evidence. *Guillot* did not address the apportionment of fees between current counsel and their co-counsel as it relates to the overall contingency-fee percentage of current counsel and former counsel.

Lastly, the Court finds that the Appraisal is protected from disclosure by the work-product privilege as it was clearly prepared for counsel in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). Indeed, the Court's review of the document reveals that it is most likely not even

4

responsive to the discovery requests.[1]

### III. Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the Motion to Compel Discovery [Doc. #387] is GRANTED IN PART and DENIED IN PART as outlined above.  Plaintiff shall comply with this Order **no later than five (5) days from the below date**.

The Court denies any request for costs.

New Orleans, Louisiana, this 24th day of June, 2014.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] In addition, intervenors maintain that the response to Request for Admission No. 5 is still deficient.  Corey admitted the RFA subject to his objections.  That is sufficient.  This point is moot.