UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID COREY                                              CIVIL ACTION

VERSUS                                                   NO. 10-3354

DEEPWATER SPECIALISTS, INC., ET AL.                      SECTION "H" (3)

REPORT AND RECOMMENDATION

On October 16, 2014, the Court held an evidentiary hearing on the claim-in-intervention of intervenors Salvador Brocato, III and Lionel H. Sutton, III ("intervenors").[1] After the evidentiary hearing, the Court took the matter under advisement and ordered the parties to file post-hearing memoranda no later than November 14, 2014. The parties have done so.

Also before the Court is a Transcript Redaction Request [Doc. #442] filed by plaintiff, for which the Court ordered supplemental briefing on the issue of the attorney-client privilege. The parties have now filed those briefs. Having reviewed the claim, the memoranda, the evidence presented at the hearing, and the case law, the Court rules as follows.

I.      Background

The facts of the underlying lawsuit are of no moment to this dispute. Relevant here is that intervenors, Brocato and Sutton, former counsel of plaintiff David Corey, seek their share of the

---

[1] The District Court referred the claim-in-intervention to this Court on July 22, 2014. [Doc. #409].

attorneys' fees realized after plaintiff's settlement with the underlying defendants. There is no dispute as to the amount of the settlement: $2,187,500.00. Neither is there a dispute as to the amount of attorneys' fees realized: $875,000.00. The only dispute is between intervenors and plaintiff's current counsel, Arnold & Itkin, L.L.P., as to what percentage of the attorneys' fees – if any – that each counsel receives. The Court will outline the parties' testimony related to their services for Corey in its analysis below. The United States Supreme Court and the Fifth Circuit have oft-repeated that a request for attorneys' fees should not spawn major ancillary litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir.1990). At the outset, the Court will note that it is disappointed that the parties failed to heed this admonition.

**II.     Law and Analysis**

    **I.     Objections to the Sworn Statement of Leo Corey**

As an initial matter, this Court must determine whether the sworn statement of Leo Corey, plaintiff's father, is admissible. If not, the Court can not rely on it to aid in the resolution of this dispute. Intervenors argue that the sworn statement is inadmissible hearsay because it was taken the day before the evidentiary hearing in this matter, and intervenors had no right to cross-examine him. Intervenors submit the declarations of Sal Brocato and Jim S. Hall to counter Leo Corey's testimony. They readily admit, however, that these declarations are also hearsay and ask the Court to consider them only if it considers the statement of Leo Corey. [Doc. #435 at p. 2].

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Unless hearsay is subject to a hearsay exception, it is not admissible. Fed. R. Evid. 802, 803. There is no dispute that the statement of Leo Corey and the declarations of

Brocato and Hall are offered to prove the truth of the matter asserted. The Court's review of the hearsay exceptions does not reveal that an exception to the rule exists here. Accordingly, the Court will not consider the statement or the declarations. In any event, the Court finds the properly-submitted evidence sufficient to resolve this matter.

## II.    The Attorneys'-Fees Dispute

### 1.    Whether a contingency-fee contract existed between intervenors and Corey.

This Court must first determine whether a contingency-fee contract existed between intervenors and Corey. If not, intervenors are entitled – if at all – only to *quantum meruit* and not the amount allegedly specified in the contract.

Under Louisiana Rule of Professional Conduct 1.5(b), "[a] contingent fee agreement shall be in writing and signed by the client." La. Rule Prof. Conduct 1.5(b).[2] The Louisiana Revised Statutes also provide that by "written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit." La. Rev. Stat. § 37:218(A). Rule 1.5(c) further requires that "[a] copy or duplicate original of the executed agreement shall be given to the client at the time of execution of the agreement." La. Rule Prof. Conduct 1.5(c).

The Fifth Circuit has held that under Rule 1.5(c), "there cannot be a division of contingency fees by lawyers who are not included in a written, client-signed contingency fee contract." *In re Calm C's, Inc.*, 179 Fed. Appx. 911, 913 (5th Cir. 2006). In *Calm C's*, the Fifth Circuit clarified that when no contingency-fee contract exists and when the attorney is discharged for cause, the attorney is entitled to recovery only on a *quantum meruit* basis. *See id.* This Court follows these mandates.

---

[2]    The Rules of Professional Conduct have the force and effect of substantive law. *Dereyna v. Pennzoil Exploration*, 880 So. 2d 124, 127-28 (La. Ct. App. 2004).

*See Mogilles v. Allstate Insurance Co.*, Civ. A. No. 07-6560, 2009 WL 653165, at *2 (E.D. La. Mar. 11, 2009) ("The law is clear: in order to be awarded a contingency fee, an attorney must get his client to sign a written fee agreement.").

There is no physical evidence of a written contingency-fee contract between intervenors and Corey. At the oral hearing, Brocato testified that he explained the fee situation to Corey, and Corey signed a contingency-fee contract. [Doc. #439 at pp. 11-12]. But Brocato admitted that he had no signed copy of the contract, probably, he testified, losing it during a move from office to office. [*Id.* at 12]. For his part, Sutton testified that he had no recollection of signing any fee agreement with Corey. [*Id.* at p. 86]. And even in their pre-trial memorandum, intervenors admit that they can not produce a copy of any agreement with Corey. [Doc. #419 at pp. 1-2]. Moreover, at his deposition, Corey testified that he never signed a fee agreement with intervenors, nor did they discuss any fee arrangement. [Doc. #426 at pp. 9, 95].[3]

This is essentially a "he-said-he-said" dispute given the lack of any physical evidence of any contract. Corey testified that he never signed a fee agreement, and neither he nor intervenors can produce a signed copy of any contract. The Court gives great weight to the testimony of Corey, who has absolutely no interest in the outcome of this fee dispute. Corey has received his monies from his attorneys and is a disinterested party to the instant dispute. There is no reason for him to lie concerning the signing of a fee agreement. The Court finds that no fee agreement existed between intervenors and Corey, and intervenors are thus entitled to recover – if at all – on a *quantum meruit* basis.

---

[3] Corey did not testify at the evidentiary hearing. The parties stipulated to the submission of the transcript of his deposition testimony.

**2.     Whether Corey discharged intervenors for cause.**

While the Court recognizes that it need not *per se* determine whether Corey discharged intervenors for cause – because it has already concluded that intervenors may only recover on a *quantum meruit* basis – the Court undertakes the issue out of an abundance of caution. A client has the absolute right to discharge his attorney, even when there is a contract between the client and his attorney. *See, e.g., In re Jones*, 859 So.2d 666, 670 (La. 2003) ("It is well settled that a client has an absolute right to discharge his or her lawyer at any time."); *Doles v. Cent. Boat Rentals, Inc.*, No. 2006 CA 0304, 2006 WL 3813700, at *2 (La. Ct. App. Dec. 28, 2006) ("Even when a client is obligated by a contract, the client has a right to discharge the attorney (and terminate the contract) at any time, with or without cause, subject to liability for payment for reasonable attorneys' fees.") (citing *Scott v. Kemper Ins. Co.*, 377 So.2d 66, 70 (La. 1979)).

This Court must first determine whether plaintiff discharged intervenors with or without cause because intervenors' potential recovery hinges on that determination. *See O'Rourke v. Cairns*, 683 So.2d 697, 704 (La. 1996) (holding that "'[t]he amount prescribed in the contingency fee contract, not *quantum meruit*, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause,'" but that, "in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the Saucier rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed.") (quoting *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1979).

The seminal decision of *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1979), discussed the awarding of attorney's fees to a discharged attorney who had been retained

pursuant to a contingency contract. In *Saucier*, the Louisiana Supreme Court held that in a case involving two attorneys with separate contingency fee contracts with the client, one attorney having been discharged without cause and the subsequent attorney having brought the case to judgment or settlement, the contingency fee is to be apportioned according to the services performed by each attorney. *Saucier*, 373 So.2d at 118. The proportionate services are to be determined according to the factors contained in Rule 1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) Whether the fee is fixed or contingent.

A trial court's apportionment of a contingency fee according to these "*Saucier* factors" is a factual determination and as such may not be disturbed absent manifest error. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La. 1993); *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 494 (La. Ct. App. 1997).

In *O'Rourke*, the Louisiana Supreme Court reaffirmed the factors and policies articulated in *Saucier*; however, the court modified the analysis for cases involving attorneys who have been discharged for cause. 683 So. 2d at 700. The court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually

agreed in any of the contingency-fee contracts executed. *O'Rourke*, 683 So.2d at 704. The Court then allocates the fee between or among discharged and subsequent counsel based on the *Saucier* factors. *Id.* Thereafter, the Court considers the nature and gravity of the cause which contributed to the dismissal and reduces by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation. *Id.*

Based on the evidence presented to it, the Court finds that Corey discharged intervenors for cause. At the oral hearing and in their memoranda, intervenors contend that Corey discharged them without cause when they refused to purchase him a car. [Doc. #439 at pp. 22-26].[4] Brocato also outlined other monies that they had advanced to Corey, such as sums to pay arrearages in child support. [*Id.* at pp. 20-21].

While the Court has no doubt that intervenors advanced monies to Corey to support him during the pendency of the lawsuit, the Court finds credible the testimony of Corey that he was dissatisfied with the services of his counsel. Little work was performed on this lawsuit before Corey discharged intervenors. It is true that intervenors filed the lawsuit. And while intervenors attended the deposition of Corey, Corey only met Sutton – who defended him at the deposition – right before it started and appeared ill-prepared and non-diligent to Corey. [Doc. 426 at pp. 96, 100-101]. Sutton prepared Corey for approximately 25 minutes before the deposition, and Corey felt like he "went in there blind" and "freaked out." [*Id.* at p. 23]. After the deposition, he "had full anxiety" and "was going insane." [*Id.*].

It is undisputed that intervenors took no depositions and hired no experts to prove Corey's

---

[4] There was an intimation at the evidentiary hearing that Corey's mother purchased him a car before he discharged intervenors [Doc. #439 at pp. 64-65], but there is no direct evidence in the record to support this statement.

case.[5]  This absence of depositions and experts worried Corey, and he feared that "something really bad was going to happen." [*Id.* at p. 95].  He testified: "It worried me because I knew that I had a pretty good case that accepted full responsibility and they didn't hire one expert, they didn't do one deposition, I knew I was in turmoil, I knew that something really bad was going to happen." [*Id.*]. Corey outlined these concerns in detail in the e-mail in which he officially terminated Brocato as lead counsel.  [Doc. #418-1].

The Court's Pacer docket confirms the lack of activity on intervenors' part.  Before Corey terminated intervenors, the record reveals approximately 68 docket entries.  Intervenors filed only three of these.  Corey testified that Brocato "didn't do anything" on the case.  [*Id.* at p. 41]. Intervenors never inspected the platform on which Corey was injured and never hired an investigator. [Doc. #439 at p. 47]. When Corey terminated intervenors in September 2011, trial was set for March 2012, and Corey had no experts to support his cause.  And the deadline to amend pleadings and to add parties had passed.  The Court finds that this would render any plaintiff worried about the attention that his suit was receiving from counsel.[6]

What happened after Corey hired A&I highlights this inactivity.  A&I invested approximately $220,000.00 in Corey's case and deposed over 20 individuals.  [*Id.* at pp. 114-15]. A&I hired multiple investigators, retained seven experts, served substantial discovery, and sued two additional parties.  The Pacer docket reveals that A&I filed 52 pleadings, including oppositions to

---

[5] While Brocato testified that he had retained a Dr. Covert as an expert, he admitted that he did not have a formal agreement with Covert with regard to the underlying lawsuit. [Doc. #439 at pp. 45-46].

[6] Intervenors also outline the work that they performed on behalf of Corey with respect to his workers' compensation claim.  But intervenors concede that this Court can not award fees for the handling of a workers' compensation claim; it may only enforce such an award.  [Doc. #439 at p. 87].

8

motions to exclude Corey's witnesses, motions in limine, an opposition to a motion for summary judgment, and a witness and exhibit list that included 95 witnesses and 133 exhibits.[7] The final pre-trial order filed by the parties was 74 pages long.  Given that intervenors and A&I both had the lawsuit for approximately two years, the difference in the amount of work is palpably noticeable.

As a result, A&I reached a settlement with defendants for Corey in the amount of $2,187,500.00.  Two defendants that intervenors had not even sued contributed $687,000.00 to that total.  When asked if satisfied with the result at his deposition, Corey responded:

> I am very, very satisfied.  That was the wrong question to ask, buddy.  I am very satisfied.  You have no idea.  I am so overjoyed.  I mean, the amount of stress they took off of my shoulders in, you know, fixing my case, you know while, you know, Sal Brocato basically murdered it.  I mean, he was sitting there; I mean, you know, he didn't do anything.  Arnold & Itkin did all kinds of depositions, all kinds of experts, everything.  Do you understand?  This was my life.  This is – this is what I had, you know.  I didn't have anything.  Do you understand what I'm saying?

[Doc. #426 at pp. 40-41].  The veracity with which Corey spoke at his deposition speaks volumes, and the Court is inclined to give it great weight, thus finding that Corey discharged intervenors for cause and dissatisfaction with the lack of attention paid to his case.[8]

### 3.     The *Saucier* Analysis

Because the Court has found that no contingency-fee contract existed between intervenors

---

[7] Intervenors maintain that the majority of the motion practice was of A&I's own making because of the experts that it hired.  But this argument misses the mark.  Intervenors assume that had they hired experts, the underlying defendants would not have challenged any aspect of their experts' testimony.  That does not reflect the Court's experience in litigation of this type.

[8] Intervenors argue that A&I loaned over $80,000.00 to Corey but that has no bearing on this Court's analysis.  Intervenors also loaned him monies during the pendency of the lawsuit.

and Corey and that Corey discharged intervenors for cause, intervenors are only entitled to recover on a *quantum meruit* basis. As the Fifth Circuit has recognized, a *quantum meruit* analysis and the application of the *Saucier* factors is essentially the same test. *City of Alexandria v. Brown*, 740 F.3d 339, 352 (5th Cir. 2014). Under either test, "a court is supposed to use the factors articulated by Louisiana Rule of Professional Conduct 1.5(a) to determine the contribution that a lawyer made to his client's case." *Id.*

Citing case law, A&I argues that intervenors deserve none of the fee award because their work had little to no value to Corey. They contend that should the Court award a fee to them, it should total no more than $5,000.00:

> The work to file a bare-bones petition and an amendment would take no more than (generously) 10 hours. At most, they devoted another 15 hours to drafting minimal discovery and passively defending Mr. Corey's deposition. A generous hourly rate of $200.00 for these 25 hours amounts to just $5,000. The Intervenors should receive nothing. But if they receive anything, it should be no more than $5,000.

[Doc. #438 at p. 22]. For their part, intervenors seek $453,700.00 (plus judicial interest), which is more than 50 per cent of the fee award of $875,000.00.

This Court is unconvinced by either party. Intervenors filed this lawsuit and participated in discovery, including initial disclosures. It is axiomatic that had intervenors not filed the lawsuit, A&I would have had no case to handle in the first instance. Intervenors discovered three additional dependants through discovery and added them to the lawsuit. They defended Corey at his deposition. Granted, this work occurred over the course of two years, but it inevitably advanced the lawsuit to some degree. Comparing the work performed by both intervenors and A&I and the results obtained as outlined above, the Court finds that intervenors are entitled to twenty per cent of the fee award.

    **4.**    **Transcript Redaction Request**

The Court has reviewed the transcript redaction request filed by Corey and the opposition filed by intervenors and finds that a ruling on the attorney-client and/or work-product privileges would be superfluous given the Court's ability to seal the transcript. Accordingly, the Court recommends that the transcript be sealed and restricted to counsels', parties', and experts' eyes only.

**III.**    **Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that the Objection to Sworn Statement of Leo Corey be SUSTAINED.

**IT IS FURTHER RECOMMENDED** that intervenors be awarded twenty (20) per cent of the fee award in their claim-in-intervention.

**IT IS FURTHER RECOMMENDED** that the transcript of the oral hearing [Doc. #439] be SEALED as outlined above.

New Orleans, Louisiana, this 11th day of February, 2015.

                                  **DANIEL E. KNOWLES, III**
                                  **UNITED STATES MAGISTRATE JUDGE**